IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIE J. GRIFFIN, JR., #04667-017, | ) |
| Plaintiff, | ) |
| vs. | ) CIVIL NO. 11-cv-110-JPG |
| W. LEHMAN, et al., | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

**GILBERT, District Judge:**

Plaintiff, an inmate currently in the Federal Correctional Institute in Yazoo City, Mississippi, was at all times relevant to this action housed in the United States Penitentiary in Marion, Illinois. Plaintiff brings this action for alleged violations of his constitutional rights by persons acting under the color of federal authority. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>     (2) seeks monetary relief from a defendant who is immune from such relief.

1

28 U.S.C. § 1915A. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Upon careful review of the complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

**Facts:**

The following version of the facts of this case is gleaned from Plaintiff's amended complaint (Doc. 17). Plaintiff was expecting visitors at the USP Marion, and informed Defendant Wiesel so that the visitors' information could be put into the computer system prior to the visit, per prison policy. However, Defendant Wiesel failed to put the information in the system, and did not inform other staff of his oversight. As a result, Defendant Pitts turned Plaintiff's visitors away because there was no information on them in the system. When Plaintiff was taken to the visiting area in anticipation of receiving his visitors, he was told by Defendant Wiesel to wait there, which Defendant Pitts witnessed. Defendant Lehman then came by and wrote Plaintiff a disciplinary ticket for being in an unauthorized area. Defendant Beggs wrote a memorandum supporting Defendant Lehman's decision to write Plaintiff a ticket.

Plaintiff was then given a disciplinary hearing regarding the incident. Defendant Auterson, who presided over the hearing, found Plaintiff guilty without considering the evidence; Defendant Auterson did not call witnesses and Plaintiff was not shown any written statements prepared by witnesses. Plaintiff was given 30 days of segregation as a result of the hearing. Thereafter, Plaintiff made requests of Defendant Julien, including a request to take a polygraph test to clear him of guilt.

Even though Plaintiff offered to pay for the test, this request was denied by Defendant Julien, along with other requests.[1]

After Plaintiff was placed in segregation, John Doe members of the SHU Staff began retaliating against Plaintiff by denying him recreation periods on February 17 and 18 as well as March 4 and 5; denying him haircuts on March 6 and 15; and denying him phone privileges the week of March 7-12, 2010, claiming that the phone was out of order. At an unspecified time Plaintiff began to be denied access to the law library, and this denial lasted for three months. Further, Plaintiff was placed in a one-man cell with another inmate, and was forced to sleep on the floor with his feet under the cell toilet. On March 21, 2010, Plaintiff submitted a grievance, complaining about the second-hand smoke generated by SHU staff, as well as the handling of food trays by staff with bare hands.

Some time later, Plaintiff agreed to act as a witness for his cellmate in a disciplinary hearing. On December 23, 2010, Defendants Baney and Chamness came to Plaintiff's cell and threatened Plaintiff by stating "you don't want to burn that bridge with me" in reference to Plaintiff's witness statement. Ultimately witnesses were not called for the hearing. At some unspecified time, Defendant Chamness made Plaintiff miss a phone conference wherein Plaintiff was supposed to participate in a court hearing. Because Plaintiff missed the phone hearing, a judgment was entered against him.

**Discussion:**

To facilitate the orderly management of future proceedings in this case, and in accordance

---

[1] Plaintiff does not state in his complaint what these other requests were or if they were related to the incidents that are the subject of this suit.

with the objectives of FED. R. CIV. P. 8(e) and 10(b), the Court finds it appropriate to break the claims in Plaintiff's *pro se* complaint and other pleadings into numbered counts, as shown below. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**Count 1:       Visitors**

Plaintiff alleges that Defendants Wiesel and Pitts denied him access to his visitors, in violation of his constitutional rights. However, prisoners do not have a fundamental right to visitation arising directly from the Constitution. *Kentucky Dep't of Corr. v. Thompson,* 490 U.S. 454 (1989). "The denial of prison access to a particular visitor 'is well within the terms of confinement ordinarily contemplated by a prison sentence,' and therefore is not independently protected by the Due Process Clause." *Id.* at 461 (citing *Hewitt v. Helms,* 459 U.S. 460 (1983)).

Statutes and regulations may limit the discretion of officials to act and thereby give an inmate a constitutionally protected liberty interest in receiving visitors; determining whether such an interest exists requires a court "to examine closely the language of the relevant statutes and regulations." *Thompson,* 490 U.S. at 461. A regulation creates a liberty interest when it contains "language creating 'substantive predicates' to guide discretion" exercised by prison officials, and "'explicitly mandatory language,' *i.e.*, specific directives to the decision maker that if the regulations' substantive predicates are present, a particular outcome must follow. . . ." *Id.* at 462-63.

The Bureau of Prisons' visiting regulations are contained in 28 C.F.R. § 540, Part D:

The Bureau of Prison encourages visiting by family, friends, and community groups to maintain the morale of the inmate and to develop closer relationships between the inmate and family members or others in the community. The Warden shall develop

4

procedures consistent with this rule to permit inmate visitation. The Warden may restrict inmate visitation when necessary to insure the security and good order of the institution.

28 C.F.R. § 540.40. The regulations provide general guidance as to the scheduling of visits, the arrangement of the visiting facilities, and certain special visits not at issue here. The warden keeps a list of visitors for each inmate, and procedures are designated in 28 C.F.R. § 540.51 for investigation of visitors and their approval for the list. However, procedural regulations do not create liberty interests. *Shango v. Jurich,* 681 F.2d 1091 (7th Cir. 1982). The only regulation setting forth substantive criteria regarding the addition of "regular visitors" to an inmate's list is 28 C.F.R. § 540.44:

> An inmate desiring to have regular visitors must submit a list of proposed visitors to the designated staff. Staff shall compile a visiting list for each inmate after suitable investigation (see § 540.51(b)). The list may include:
>
> (a) Members of the immediate family . . .
> (b) Other relatives . . .
> (c) Friends and associates:
> > The visiting privilege ordinarily will be extended to friends and associates having an established relationship with the inmate prior to confinement, unless such visits could reasonably create a threat to the security and good order of the institution.
> (d) Persons with prior criminal convictions. . .
> (e) Children under sixteen. . . .

28 C.F.R. § 540.44. The Court finds that this regulation lacks the "explicitly mandatory language" required for a finding that the regulation requires a particular outcome when factual predicates are met. The "visiting privilege *ordinarily* will be extended to friends and associates;" such language does not compel a result, it merely indicates a norm, from which some deviation is possible. Moreover, § 540.44 describes whom the warden "may" include on the visitor list, and nothing in the regulation indicates that the warden *must* include anyone on an inmate's regular visitor list.

5

When no protected liberty interest is involved, an inmate has no right to due process before visitors are denied, and the privilege may be denied for any reason or no reason at all, except for a reason that is constitutionally impermissible. No impermissible motive is suggested here. Plaintiff simply states that Defendant Wiesel forgot to add his visitors' information to the system, and for this reason Defendant Pitts turned the visitors away. This does not alone rise to a constitutional violation, as discussed above. For this reason, this Count is dismissed with prejudice, for failure to state a claim upon which relief can be granted.

**Count Two: Disciplinary Ticket**

Plaintiff next claims that Defendants Lehman and Beggs violated his constitutional rights when Defendant Lehman wrote Plaintiff a disciplinary ticket for being in an unauthorized area and Defendant Beggs wrote a memorandum supporting the ticket. A plaintiff states a claim for violation of procedural due process rights when he alleges that defendants have filed and/or approved disciplinary tickets, reports, and other documents that contain false charges that are not supported by any evidence. *Webb v. Anderson*, 224 F.3d 649 (7th Cir. 2000); *Black v. Lane*, 22 F.3d 1395 (7th Cir. 1994). The issuance of these documents containing false statements rises to a substantive due process violation where the charges were fabricated in retaliation for the plaintiff's exercise of a constitutional right. *Black* at 1402-03; *see also Cain v. Lane*, 875 F.2d 1139, 1145 (7th Cir. 1988); *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989) (stating that the filing of a false disciplinary charge against a prisoner is actionable where it is done for retaliatory purposes). However, in *Hanrahan v. Lane*, 747 F.2d 1137, 1140-41 (7th Cir. 1984), the Seventh Circuit held that the filing of false disciplinary charges by a correctional officer does not state a Fourteenth Amendment claim when the accused inmate is given a subsequent hearing on those charges in which the inmate is

6

afforded the procedural protections outlined in *Wolff v. McDonnell*, 418 U.S. 539 (1974).

Plaintiff alleges that the ticket written by Defendant Lehman and supported by Defendant Beggs violated his due process rights because it was written without consulting other correctional officers, specifically Defendant Wiesel, who told Plaintiff to remain in the "unauthorized location" in which he was found. From the complaint filed by Plaintiff, it seems as if he was standing in the visitation area and Defendants Lehman and Beggs just happened upon him. Because his visitation information was not in the computer system, Plaintiff was technically in an unauthorized area, which is why he was written a disciplinary ticket. Thus, it cannot be said that the ticket contained false statements, because it stated the literal truth: that Plaintiff was found in an area where he was not authorized at that time to be. There is also no indication that the ticket was written in retaliation for any actions taken by Plaintiff. It seems that Defendants Lehman and Beggs were following protocol when they issued Plaintiff a ticket for being in an unauthorized location, *see* 28 C.F.R. § 541.13, Table 3: Code 316, and any defenses Plaintiff may have had could be raised in the disciplinary hearing that he would have on the ticket. *See Hanrahan*, 747 F.2d at 1140-41. As a result, neither Defendant Lehman nor Defendant Beggs violated Plaintiff's constitutional rights when he was issued a disciplinary ticket for being in an unauthorized area. Count 2 is thereby dismissed with prejudice.

**Count Three:         Disciplinary Hearing**

Plaintiff next alleges that his right to due process was violated when Defendant Auterson found him guilty without consulting evidence, interviewing witnesses, or giving Plaintiff the opportunity to review whatever evidence Defendant Auterson may have considered. Prison disciplinary hearings satisfy procedural due process requirements where an inmate is provided: (1) written notice of the charge against the prisoner twenty four (24) hours prior to the hearing; (2) the

7

right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the reasons for the action taken against the prisoner. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988). Not only must the requirements of *Wolff* be satisfied, but the decision of the disciplinary hearing board must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). To determine whether this standard has been met, courts must determine whether the decision of the hearing board has some factual basis. *Webb v. Anderson*, 224 F.3d 649 (7th Cir. 2000).

Plaintiff alleges that he had witnesses who would testify that Defendant Wiesel informed Plaintiff that he was to remain where he was, in the "unauthorized" area. However, these witnesses were not called. The right to call witnesses was considered in the *Wilkinson v. Austin* case, where it was determined that a prison has a legitimate interest in controlling individual inmates as well as the prison in general, and that this interest is threatened by allowing inmates the opportunity to call witnesses to disciplinary hearings, making the potential value of the witness testimony small in comparison to the cost to security. *Wilkinson v. Austin*, 545 U.S. 209, 228 (2005). Where the inquiry draws more on the experience of prison administrators, and where the prison's interest implicates the safety of other inmates and prison personnel, the informal, nonadversary procedures set forth in *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1 (1979) and *Hewitt v. Helms,* 459 U.S. 460 (1983), provide the appropriate model. *Wilkinson v. Austin*, 545 U.S. 209, 229 (2005).

Were an inmate allowed to call witnesses or be provided other attributes of an adversary

hearing, both the prison's immediate objective of controlling the prisoner and its greater objective of controlling the prison could be defeated. This problem, moreover, is not alleviated by providing an exemption for witnesses who pose a hazard, for nothing in the record indicates simple mechanisms exist to determine when witnesses may be called without fear of reprisal. The danger to witnesses, and the difficulty in obtaining their cooperation, make the probable value of an adversary-type hearing doubtful in comparison to its obvious costs. *Id.* at 228. Thus, a due process violation is not implicated simply because Plaintiff's witnesses were not called.

However, Plaintiff further alleges that Defendant Auterson failed to review any evidence before making the determination of guilt. Plaintiff insinuates that there was no evidence, and bases this statement on the fact that he was never given a chance to review any evidence. Disciplinary hearing decisions must be based on "some evidence," *Black,* 22 F.3d at 1402, but according to Plaintiff there was no evidence. Because it is unclear at this point what, if any, evidence Defendant Auterson reviewed in making the finding of guilt, this count cannot be dismissed at this point in the litigation.

**Count Four: Polygraph**

Plaintiff next alleges that Defendant Julien violated his constitutional rights when Plaintiff's request to take a polygraph test, in an effort to prove his innocence, was denied along with other requests.[2] However, even where Plaintiff sought to take the polygraph test to prove his innocence, and even where he has offered to pay for it himself, he has no constitutional right to such a test.

---

[2]As stated previously, Plaintiff does not elaborate on what other requests he has made of Defendant Julien. As such, it is impossible for the Court to determine whether the denial of any of these requests amounts to a constitutional violation. Therefore, the Court will rule only on the denial of the request for a polygraph test.

Inmates are not entitled to take a polygraph test in an attempt to disprove guilt. *See Jemison v. Knight*, 244 F. App'x 39, 42 (7th Cir. 2007); *Freitas v. Auger*, 837 F.2d 806, 812 n. 13 (8th Cir. 1988) (holding that prisoners are not entitled to polygraph tests in disciplinary hearings); *see also Outlaw v. Wilson*, No. 07-cv-54, 2007 WL 1295815 (N.D. Ind. April 30, 2007) (inmate had no right to require prison staff to create favorable evidence in the form of a lie detector test).

Though Plaintiff may have had the honorable intention of clearing his name when making the request to take the polygraph test, he is not required by law to have access to the test to disprove guilt, even if he has offered to foot the bill himself. As such, Plaintiff has not alleged that Defendant Julien violated any of Plaintiff's constitutional rights when he denied the polygraph request. This Count is thus dismissed with prejudice.

**Count Five:   Retaliation**

Plaintiff next alleges that once he arrived in segregation, Defendants John Doe SHU Staff members began retaliating against Plaintiff. Specifically, during the year 2010 he was denied recreational time on February 17, 18, and March 4, 5; denied haircuts on March 6 and 15; and was denied use of the phone from March 7 through March 12 because the phone was allegedly out of service. At some unspecified time Plaintiff began being restricted from use of the law library, a restriction that lasted for three months. Further, Plaintiff was placed in a one-man cell with another inmate, and was forced to sleep on the floor with his feet under the toilet. Plaintiff seems to indicate that the retaliation may have been the result of a complaint he filed on March 21 about the second-hand smoke generated by SHU staff members which entered the facility through windows, as well as the bare-handling of food trays by staff members.

The Supreme Court has stated that there are no special pleading requirements for prisoner

civil rights cases. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 513-14 (2002); *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993); *Kyle v. Morton High School*, 144 F.3d 448, 455 (7th Cir. 1998) (per curiam). Where a complaint complies with federal rules, in that it provides a short and plain statement of the facts, it cannot then be dismissed for failure to sufficiently allege facts that prove the claim(s) alleged. Fed. R. Civ. P. 8; *see Nance v. Vieregge*, 147 F.3d 589, 590-91(7th Cir. 1998) (complaint need not plead facts to establish that the claim(s) are sufficiently valid). It is sufficient for a plaintiff to state enough of the bare facts in the complaint to apprise the defendants(s) of the claims brought against them. *Beanstalk Grp. Inc. v. AM General Corp.,* 283 F.3d 856, 863 (7th Cir. 2002); *Kirksey v. R.J. Reynolds Tobacco Co.,* 168 F.3d 1039, 1041 (7th Cir. 1999). In the prison context, where an inmate is alleging retaliation, it is not enough to simply state the cause of action. The inmate must identify the reasons that retaliation has been taken, as well as "the act or acts claimed to have constituted retaliation," so as to put those charged with the retaliation on notice of the claim(s). *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). As stated above, the inmate need not plead facts to establish the claim beyond doubt, but need only provide the bare essentials of the claim, and in a claim for retaliation the reason for the retaliation and the acts taken in an effort to retaliate suffice. *Id.*

In the instant action, Plaintiff has attempted to plead retaliation by pointing to the denial of recreation times, haircuts, phone use, and library use, as well as being housed in a one-man cell with another inmate as the action taken against him in an effort to retaliate. In his complaint, Plaintiff points only to his complaint lodged against staff regarding second-hand smoke and handling of food trays as the cause of the retaliation. This grievance was filed on March 21, *after* a number of the actions Plaintiff alleges were retaliatory took place (recreation times were denied February 17, 18

and March 4, 5; haircuts were denied March 6, 15; phone use was denied March 7 through 12). However, it is unclear at this point whether staff members knew Plaintiff was going to file the complaint, and took these actions in an effort to intimidate Plaintiff so that he would not file it. Further, Plaintiff did not provide dates in his complaint as to when he began to be denied access to the library or when he was placed in a one-man cell with a cellmate, so it is unclear whether these actions were taken before or after the complaint was filed. Because it is unclear which of these actions, if any, were taken in retaliation for Plaintiff's complaint, this count cannot be dismissed at this time.

**Count 6:** **Severable Claims**

Plaintiff attempts to bring claims against Defendant Baney and Chamness for intimidation and retaliation because Plaintiff agreed to serve as a witness for his cellmate's disciplinary hearing. However, these claims do not relate to the other claims in Plaintiff's complaint as required by Rule 20(a)(2) of the Federal Rules of Civil Procedure. And while Rule 18(a) of the Federal Rules of Civil Procedure permits Plaintiff to assert all of his claims against one defendant in one civil action, Defendants Baney and Chamness are not named elsewhere in Plaintiff's complaint. As such, the attempted joinder of Defendants Baney and Chamness with the other named Defendants is improper.

The Seventh Circuit recently confirmed that separate, unrelated claims belong in different suits. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). On review of the complaint, the claims against Defendants Baney and Chamness are not sufficiently related to the claims against Defendants Lehman, Beggs, Auterson, Wiesel, Pitts, SHU Staff, and Julien so as to allow them to proceed together in one lawsuit.

Plaintiff is **ADVISED** that the Court is inclined to sever the claims against Defendants

Baney and Chamness. If these claims are severed, they would be removed from this case and opened in a new case. A new case number would be assigned and a second filing fee would be assessed.

Because the imposition of a second filing fee may impose a financial burden on him, Plaintiff is **FURTHER ADVISED** that he may avoid severance (and the imposition of a second filing fee) by filing a motion to voluntarily dismiss Defendants Baney and Chamness without prejudice within 45 days of the date of this order. Before filing that motion, Plaintiff shall consider whether he could re-file the dismissed claims without running afoul of the applicable 2-year statute of limitations.

**Unspecified Defendants:**

Even though they are named in the caption of the complaint, Plaintiff has failed to state any claims against Defendants Walters, Parmlee, Lockridge, or Thomas in the complaint. The reason that plaintiffs, even those proceeding *pro se*, for whom the Court is required to liberally construe complaints, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), are required to associate specific defendants with specific claims is so these defendants are put on notice of the claims brought against them and so they can properly answer the complaint. "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Conley v. Gibson*, 355 U.S. 41, 47 (1957)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, where a plaintiff has not included a defendant in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him. Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the

caption.").

Plaintiff has not included claims against Defendant Walters, Parmlee, Lockridge, or Thomas in his complaint. Thus, these Defendants have not been adequately apprised of the claims Plaintiff may have against them. Because of this deficiency, Defendants Walters, Parmlee, Lockridge, and Thomas are dismissed from this action without prejudice.

**Pending Motions:**

On March 3, 2011, Plaintiff filed a Motion to Voluntarily Dismiss the action presently before the Court (Doc. 11). In that motion, Plaintiff stated that it was not his intention to file a civil complaint at that time. However, Plaintiff filed a motion to amend his complaint, along with an amended complaint on April 25, 2011 (Doc. 13). The Court interprets this action as a change of heart on Plaintiff's part, and therefore the earlier filed Motion to Voluntarily Dismiss (Doc. 11) is **DENIED**. Should Plaintiff decide that he does, in fact, want to voluntarily dismiss the current action, he may file a new motion.

**Disposition:**

**IT IS HEREBY ORDERED** that Defendants **WIESEL, PITTS, LEHMAN, BEGGS**, and **JULIEN** are **DISMISSED** from this action with prejudice. Defendants **WALTERS, PARMLEE, LOCKRIDGE** and **THOMAS** are **DISMISSED** from this action without prejudice. The Court reserves ruling on the disposition of the claims against Defendants **BANEY** and **CHAMNESS** until the severance issue has been resolved, and service shall not be completed on these defendants until that point.

The Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendant **AUTERSON**; the Clerk shall issue the completed

summons. The United States Marshal **SHALL** serve Defendant **AUTERSON** pursuant to Rule 4(e) of the Federal Rules of Civil Procedure.[3] All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

Service shall not be made on the Unknown (John Doe) Defendants **SHU STAFF** until such time as Plaintiff has identified them by name in a properly filed amended complaint. It is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals. **IT IS FURTHER ORDERED** that Plaintiff shall file an amended complaint with this Court, providing the names of the John Doe Defendants **SHU STAFF** within **63 days** of the date of this order. Failure to file an amended complaint may result in the dismissal of the claims against **SHU STAFF** pursuant to Federal Rule of Civil Procedure 41(b).

In addition, pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the complaint, and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the complaint, and this Memorandum and Order.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon the Defendant, or if an

---

[3] Rule 4(e) provides, "an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or law to receive service of process."

appearance has been entered by counsel, upon that attorney, a copy of every pleading or other document submitted for consideration by this Court. Plaintiff shall include with the original paper to be filed a certificate stating the date that a true and correct copy of the document was mailed to each defendant or counsel. Any paper received by a district judge or a magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendant **AUTERSON** is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Frazier for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Frazier for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Finally, Plaintiff is **ADVISED** that he is under an obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 19, 2011**

*s/J. Phil Gilbert*
**United States District Judge**